IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANNY FOSTER                                                                                      PLAINTIFF

vs.                                          Civil No. 2:09-cv-02140

MICHAEL J. ASTRUE                                                                           DEFENDANT
Commissioner, Social Security Administration

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Danny Foster ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and a period of disability under Titles II and XVI of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Robert T. Dawson referred this case to this Court for the purpose of making a report and recommendation. In accordance with that referral, and after reviewing the arguments of counsel, this Court recommends Plaintiff's case be **AFFIRMED.**

**1. Background:**

Plaintiff filed applications for SSI and DIB on April 18, 2005.[1] (Tr. 74).[2] Plaintiff alleged he was disabled due to a list of conditions, including numerous pain complaints, depression, and mental

---

[1] It appears Plaintiff previously filed applications for disability benefits back in 1999 and 2001. (Tr. 65-67, 71-73). Those applications are not before this Court.

[2] The docket numbers for this case are referenced by the designation "ECF No. ____." The transcript pages for this case are referenced by the designation "Tr."

1

retardation. (Tr. 283, 287, 303). Plaintiff alleged an onset date of August 1, 2004. (Tr. 17). These applications were denied initially and upon reconsideration. (Tr. 34-35). On November 5, 2005, Plaintiff requested an administrative hearing on his applications. (Tr. 54).

This hearing request was granted, and a hearing was held on April 20, 2006 in Fort Smith, Arkansas. (Tr. 294-321). Subsequent to this hearing, the ALJ entered an unfavorable decision denying Plaintiff's request for disability benefits. (Tr. 17-23). Plaintiff then appealed his case to this Court, and the Honorable U.S. Magistrate Judge James R. Marschewski reversed and remanded Plaintiff's case for further development of the record. (Tr. 342-348). Upon remand to the SSA, a different ALJ conducted a second administrative hearing on December 3, 2008 in Fort Smith, Arkansas. (Tr. 449-473).

At this hearing, Plaintiff was present and was represented by counsel, Davis Duty. *Id.* Plaintiff and Vocational Expert ("VE") Tanya Owen testified at this hearing. *Id.* On the date of this hearing, Plaintiff was thirty-eight (38) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008), and had graduated from high school with the assistance of special education classes. (Tr. 454-455).

On July 31, 2009, the ALJ entered an unfavorable decision denying Plaintiff's applications for SSI and DIB. (Tr. 325-336). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through March 31, 2008. (Tr. 327, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since August 1, 2004, his alleged onset date. (Tr. 327, Finding 2). The ALJ determined Plaintiff had the following severe impairments: borderline intellectual functioning, mood disorder, and a lumbar strain. (Tr. 327-328, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that

met or medically equaled one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 328-331, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 331-335, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined, based upon his review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can sit for about six hours during an eight-hour workday and can stand and walk for six hours during an eight-hour workday. The claimant can frequently climb stairs, balance, stoop, kneel, crouch and crawl. The claimant cannot climb ropes or scaffolds. The claimant can frequently handle and finger. The claimant can perform simple, low-stress (occasional decision making and occasional changes in work place settings), unskilled work where interpersonal contact is incidental to the work performed.

(Tr. 331, Finding 5).

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr.335, Finding 6). The ALJ determined Plaintiff's PRW included work as an industrial cleaner and plastics cleaner. (Tr. 335, Finding 6). The VE characterized these jobs as medium and unskilled. *Id.* Based upon Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform this PRW. *Id.* The ALJ then found Plaintiff had not been under a disability, as defined by the Act, from August 1, 2004 (Plaintiff's alleged onset date) through the date of his decision or through July 31, 2009. (Tr. 335, Finding 7).

Thereafter, by September 30, 2009, the Appeals Council declined to assume jurisdiction of this case. *See* 20 C.F.R. § 404.984 (2009). Thus, this opinion became the final opinion of the SSA. *Id.* (stating an ALJ's opinion after remand by the district court is final sixty days after it is filed as long

as no objections are filed and the Appeals Council does not assume jurisdiction). On November 4, 2009, Plaintiff filed the present appeal. ECF No. 1. Both parties have filed appeal briefs. ECF Nos. 10-11. This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her

disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff filed the present appeal claiming the ALJ's disability determination is not supported by substantial evidence in the record. ECF No. 10. Specifically, in his appeal brief, Plaintiff claims the following: (A) the ALJ erred by failing to recognize all of his severe impairments; (B) his impairments meet or equal Listing 12.05C; (C) the ALJ improperly determined his RFC; and (D) the ALJ improperly determined he could return to his PRW. *Id.* This Court will address each of these

four arguments.[3]

### A.  Severe Impairment Determination

Plaintiff claims the ALJ did not properly recognize all of his severe impairments. ECF No. 10 at 11-12. Plaintiff claims he suffers from the following severe impairments: personality disorder, attention deficit hyperactivity disorder ("ADHD"), functional illiteracy, and a hand impairment. *Id.* Plaintiff claims the ALJ erred by not including these impairments during his Step Two analysis. *Id.* In response, Defendant alleges that none of those stated impairments are severe and that the ALJ properly found Plaintiff's borderline intellectual functioning, mood disorder, and lumbar strain were his only severe impairments. ECF No. 11 at 6-8.

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. *See* 20 C.F.R. § 404.1520(c). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. *See* Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. *See Brown v. Yuckert,* 482 U.S. 137, 153-54 (1987). The claimant, however, has the burden of proof of showing he or she suffers from a medically-severe impairment at Step Two. *See Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).

This Court will address each impairment which Plaintiff claims is severe. First, Plaintiff claims his personality disorder is severe. Plaintiff claims both Dr. Walz and Dr. Spray diagnosed him with personality disorder, and, therefore, this impairment should have been considered to be "severe." This Court notes that both Dr. Walz (Tr. 250) and Dr. Spray (Tr. 436) diagnosed Plaintiff with "Dependent

---

[3] As an initial matter, however, this Court notes that Plaintiff does not claim his disability began until August 1, 2004. Therefore, this Court will focus upon his medical records dated after his alleged onset date.

Personality Disorder." These diagnoses are, however, the only information contained in the record related to these alleged impairments. Indeed, there is no indication from the record that these diagnoses translate into functional restrictions that would impact Plaintiff in his ability to work. Plaintiff has provided no reference in the transcript related to any such limitations caused by his dependent personality disorder or that this impairment has more than a "minimal effect" on his ability to work. Thus, this Court finds the ALJ properly determined Plaintiff did not meet his burden of demonstrating his personality disorder was severe.

Second, Plaintiff claims his ADHD is a severe impairment. Plaintiff references Dr. Brown's diagnosis that he suffers from "possible attention deficit hyperactivity disorder." ECF No. 10 at 11. This Court notes Dr. Brown did diagnose Plaintiff with "possible attention deficit-hyperactivity disorder." (Tr. 255). This is a tentative finding, however, as indicated by the fact Dr. Brown found a "possible" diagnosis. Further, as with the diagnosis for dependent personality disorder referenced above, there is no indication this impairment places any limitations on his ability to work. Thus, consistent with the finding above, this Court finds the ALJ properly determined Plaintiff did not meet his burden of demonstrating his ADHD was severe.

Third, Plaintiff claims his functional illiteracy is a severe impairment. Plaintiff claims his literacy examination indicated he only read at the grade equivalent of first grade, eighth month, and the ALJ should have found this functional illiteracy was a severe impairment. (Tr. 181). Despite this objection, this Court finds literacy is an issue evaluated as a vocational consideration. *See Pena v. Astrue,* No. 07-51004, 2008 WL 749558, at *2 (5th Cir. Mar. 20, 2008) (finding an opinion that the claimant was illiterate was not a medical opinion because literacy is a category of education which is a vocational factor and is not a medical condition). Thus, the ALJ was not required to find functional illiteracy was a severe impairment. Furthermore, the ALJ found Plaintiff's borderline intellectual

functioning was a severe impairment, and Plaintiff's functional illiteracy would be considered as a part of Plaintiff's borderline intellectual functioning. Thus, this Court finds the ALJ did not err by finding Plaintiff's functional illiteracy was not a severe impairment.

Fourth and finally, Plaintiff alleges his hand impairment is a severe impairment. Plaintiff's only evidence during the relevant time period that his hand impairment is a severe impairment is from Dr. Tompkins.[4] (Tr. 442). Dr. Tompkins found Plaintiff suffered from bilateral hand numbness. *Id.* In making this finding, Dr. Tompkins merely found Plaintiff suffered from this condition. *Id.* He did not find Plaintiff suffered from any functional limitations as a result of this impairment. *Id.* Thus, this Court finds the ALJ properly determined Plaintiff had not met his burden of demonstrating his hand impairment was severe.

    **B.**    **Listing 12.05C Determination**

Plaintiff claims his mental impairment meets or is functionally equivalent to Listing 12.05C. ECF No. 10 at 12-13. Plaintiff claims his IQ testing demonstrates he has a verbal IQ of 72, a performance IQ of 76, and a full scale IQ of 72. *Id.* Plaintiff claims this IQ score, coupled with his other impairments, meets or is functionally equivalent to Listing 12.05C. *Id.* In response, Defendant claims Plaintiff has not met his burden of establishing he meets the requirements of any of the listings, including Listing 12.05C. ECF No. 11 at 8-10.

As an initial matter, Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Plaintiff has demonstrated that his lowest IQ score was 72. (Tr. 187-189). Thus, based upon the language of Listing 12.05C, Plaintiff clearly has not demonstrated that he

---

[4]Plaintiff also references findings from Dr. Bakleh. (Tr. 217-218). However, these findings are from 2000, and they are well outside the relevant time period. (Tr. 220).

meets the requirements of this listing.

In his briefing, Plaintiff recognizes this shortcoming and argues that because his IQ score is within the range of 70-75, his mental impairment is functionally equivalent to Listing 12.05C. ECF No. 10 at 13. However, even if Plaintiff were correct in his claim that an IQ score of 72 would make his mental impairment functionally equivalent to Listing 12.05C, he still has not demonstrated his IQ score fell within that range during the relevant time period. Indeed, the testing wherein he was found to have an IQ score of 72 (verbal and full scale) was performed on February 2, 2000. (Tr. 186-187). Plaintiff's alleged onset date is August 1, 2004, and this testing was done well before his alleged onset date. Further, more recent testing, which occurred during the relevant time period, found his IQ score to be 82 (verbal), 91 (performance), and 85 (full scale). (Tr. 253-256).

Additionally, even if this IQ testing was performed during the relevant time period, the ALJ was not required to adopt the findings of this one-time examining psychologist. *See Muncy v. Apfel,* 247 F.3d 728, 733 (8th Cir. 2001) (holding that "[a]n ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior."). This is especially true since Plaintiff's daily activities were extensive, and his history indicates he was able to live alone for six months with no difficulty. (Tr. 454). Based upon these findings, this Court holds Plaintiff has not met his burden of establishing his mental impairment was functionally equivalent to Listing 12.05C during the relevant time period.

    **C.**    **RFC Determination**

Plaintiff claims the ALJ erred in evaluating his RFC. ECF No. 10 at 14-18. Plaintiff claims, in assessing his RFC, the ALJ did not properly consider his mental or physical impairments. *Id.* For both his mental and physical impairments, Plaintiff claims the ALJ erred by failing to fully and

properly evaluate his medical records. *Id.* In response, Defendant claims the ALJ fully considered both Plaintiff's mental and physical impairments, fully considered his medical records, and properly determined his RFC. ECF No. 11 at 10-18.

As an initial matter, in addressing Plaintiff's RFC, it is important to note that it appears none of the physicians and psychologists referenced in Plaintiff's medical records were Plaintiff's treating physicians and psychologists, and none of their opinions are entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d). It is also important to note that Plaintiff does not reference any treatment records for his alleged physical or psychological impairments in his briefing. It appears all Plaintiff's medical records are from consultative examinations. The fact Plaintiff did not seek treatment for his conditions may indicate his impairments are not as severe as he alleges. *See Shannon v. Chater,* 54 F.3d. 484, 487 (8th Cir. 1995) (holding "[g]iven his alleged pain, Shannon's [plaintiff's] failure to seek medical treatment may be inconsistent with a finding of disability").

Plaintiff claims the ALJ did not properly consider the opinions of any of his psychologists and claims the ALJ did not properly determine his RFC.[5] For his mental impairments, the ALJ determined Plaintiff had the following mental limitations: "The claimant can perform simple, low-stress (occasional decision making and occasional changes in work place settings), unskilled work where interpersonal contact is incidental to the work performed." (Tr. 331, Finding 5). In making this assessment and in evaluating Plaintiff's mental limitations, the ALJ considered the opinions of three consultative psychologists: Dr. Walz (Tr. 247-251, 394-396), Dr. Brown (Tr. 253-256), and Dr. Spray (Tr. 433-440).

---

[5]Plaintiff also claims the ALJ did not properly consider his illiteracy. ECF No. 10 at 17. However, as noted above, this a *vocational* consideration, not a *medical* consideration. Thus, the ALJ did not err in assessing Plaintiff's illiteracy as a part of Plaintiff's RFC.

10

Dr. Walz assessed Plaintiff on July 15, 2005 during a consultative mental status examination. (Tr. 329-330, 333). Although Plaintiff suggests the ALJ ignored Dr. Walz's actual examination findings, the ALJ detailed Dr. Walz's evaluation in his opinion when he addressed whether Plaintiff met or equaled a listing. (Tr. 329-330). Plaintiff also claims the ALJ did not properly consider Dr. Walz's finding that he suffered from "slow cognition." ECF No. 10 at 14. However, contrary to Plaintiff's claim, the ALJ specifically recognized and considered that Dr. Walz found Plaintiff's concentration, persistence, and pace to be slow. (Tr. 251, 330). Further, in making his RFC determination, based partly upon Dr. Walz's assessment, he found Plaintiff could only perform "simple" work. (Tr. 331, Finding 5). Such an assessment is entirely consistent with Dr. Walz's findings.

The ALJ also considered Dr. Brown's August 2, 2005 mental status examination. (Tr. 329-330). The ALJ set forth Dr. Brown's findings in his listings analysis. *Id.* Plaintiff claims the ALJ did not fully evaluate and give proper weight to Dr. Brown's finding that Plaintiff "would have problems handling work pressures and paying attention." ECF No. 10 at 16. This Court notes that while Dr. Brown found Plaintiff would has these difficulties, the ALJ's RFC determination that Plaintiff can perform "simple, low-stress" work is entirely consistent with Dr. Brown's assessment of Plaintiff's limitations. Thus, this Court finds the ALJ did not err in considering this finding by Dr. Brown.

The ALJ also considered Dr. Spray's December 18 and 22, 2008 mental status evaluation of Plaintiff. (Tr. 329-330, 333-334). Plaintiff claims the ALJ failed to consider Dr. Spray's finding that he was "markedly limited in his ability to sustain a routine without special supervision." ECF No. 10 at 15. Although Dr. Spray made this finding, the other consultative psychologists did not find Plaintiff had such a severe restriction, and the ALJ did not commit reversible error by finding the opinions of the other psychologists were more credible than the opinion of Dr. Spray. *See Estes v. Barnhart,* 275

11

F. 3d 722, 725 (8th Cir. 2002) (noting it is the ALJ's function to resolve conflicts among treating and examining physicians). Furthermore, even with a "marked" limitation in this area, there is no indication Plaintiff would be unable to perform "simple, low-stress" work as the ALJ found. Thus, this Court finds the ALJ did not err in assessing Plaintiff's mental RFC.

For his physical impairments, Plaintiff claims the ALJ failed to consider his back pain and his hand limitation. ECF No. 10 at 17. Plaintiff cites no medical records in support of his claim that these impairments are disabling, either singularly or in combination with other impairments. *Id.* While Plaintiff has submitted medical records from a one-time examining physician, Dr. Tompkins, which indicate he has some limitation in this area, these records do not provide substantial evidence that either of these impairments are any more than mild limitations on his ability to work. (Tr. 442-443). *See Cox v. Barnhart,* 345 F.3d 606, 610 (8th Cir. 2003) (holding "[w]e [the Eighth Circuit] have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision"). Plaintiff has the burden of establishing his RFC. *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (holding that the claimant has the burden to establish his or her RFC). Because Plaintiff has not met his burden of establishing he suffers from these severe physical impairments, this Court find the ALJ did not err in his RFC determination.

    **D.**    **PRW Determination**

Plaintiff claims the ALJ improperly determined he retained the ability to perform his PRW. ECF No. 10 at 18-19. With this argument, Plaintiff both claims the ALJ erred in performing his RFC determination and erred in assessing the requirements of Plaintiff's PRW. This Court has already addressed whether the ALJ erred in assessing Plaintiff's RFC, including whether the ALJ properly addressed Plaintiff's mental limitations. Accordingly, this Court will only address whether the ALJ

12

erred in assessing Plaintiff's PRW. To assess Plaintiff's PRW, the ALJ first questioned the VE regarding the requirements of Plaintiff's PRW. (Tr. 468-469). The VE testified Plaintiff had PRW as an industrial cleaner and as a plastics cleaner. *Id.* The VE classified Plaintiff's PRW as an industrial cleaner as unskilled, medium work and further identified the relevant *Dictionary of Occupational Titles* (DOT) number as 381.687-018. (Tr. 469). The VE also classified Plaintiff's work as a plastics cleaner as unskilled, medium work and further identified the DOT number as 599.687-030. (Tr. 469).

Based upon these classifications, the ALJ then posed a hypothetical question to the VE that included all Plaintiff's limitations. (Tr. 469-470). In response to this specific hypothetical question, the VE testified Plaintiff could perform his PRW as an industrial cleaner and plastics cleaner. *Id.* Because the ALJ included all of Plaintiff's limitations in his hypothetical to the VE, the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff retained the capacity to perform his PRW as an industrial cleaner and plastics cleaner. *See Depover v. Barnhart,* 349 F.3d 563, 568 (8th Cir. 2003) (finding the VE's response to a properly-phrased hypothetical question provides substantial evidence to support the ALJ's finding that the claimant could return to his PRW). Thus, the ALJ's decision that Plaintiff could perform his PRW is supported by substantial evidence in the record.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence in the record. This Court recommends that the ALJ's decision be affirmed.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in**

**which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

  **ENTERED this 4th day of January, 2011.**

               /s/   Barry A. Bryant  
               HON. BARRY A. BRYANT  
               U.S. MAGISTRATE JUDGE